**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SIGHTSEEING GUIDES AND LECTURERS UNION LOCAL 20076 OF GREATER NEW YORK, AFL–CIO, Respondent.**

**No. 34, Docket 27417.**

United States Court of Appeals Second Circuit.

Argued Oct. 15, 1962.

Decided Nov. 9, 1962.

Stuart Rothman, Gen. Counsel, N. L. R. B., Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallett-Prevost, Asst. Gen. Counsel, Melvin Pollack, Peter Giesey, Attys., N. L. R. B., for petitioner.

Abramson & Lewis, New York City (Leonard Greenwald, New York City, of counsel), for respondent.

Before WATERMAN, FRIENDLY and MARSHALL, Circuit Judges.

WATERMAN, Circuit Judge.

The National Labor Relations Board has petitioned, pursuant to Section 10(e) of the National Labor Relations Act, as amended 29 U.S.C. § 160(e), for enforcement of a Board order issued against Sightseeing Guides and Lecturers Union Local 20076 of Greater New York, AFL-CIO. The decision and order of the Board are reported at 133 N.L.R.B. 985 (1961).

The Board found that respondent Union violated Section 8(b) (1) (A) and (b) (2) of the N.L.R.A., 29 U.S.C. § 158(b)

(1) (A) and b(2). Assuming the Board's jurisdiction over the practices involved, this finding was manifestly justified by the evidence.

In 1959, the Union entered into identical collective bargaining agreements with six employer-members of the New York Sightseeing Bus Association. The agreements covered the employment of guide-lecturers until March 1, 1961, and provided, with respect to union security, as follows:

"Paragraph 6(a): The Company agrees to accept business only from and employ only members of the Union in good standing; (b) The Company agrees to call upon the Union first for each additional lecturer as they may require. The Company shall have an absolute preference in the hiring of additional lecturers. When the Union is unable to supply such additional lecturer, the Company may employ such help as they may require. In the event that such help is employed for a period of 2 weeks, the continuation of such help in the Company's employ shall be conditional thereafter upon admission of such help to union membership."

It is evident that this provision exceeded the limited form of union security permitted in the proviso to Section 8(a) (3) of the Act. N. L. R. B. v. Gottfried Baking Co., 210 F.2d 772 (2 Cir., 1954); Red Star Express Lines v. N. L. R. B., 196 F.2d 78, 81 (2 Cir., 1952). Assuming, again, the jurisdiction of the Board, the mere retention by the Union of the preferential hiring clause in its contract during the six months preceding the filing of charges against it constitutes a violation of Section 8(b) (1) (A). N. L. R. B. v. Gottfried Baking Co., supra. But the Union did more. It actively enforced the provision against one Irving Scher by denying him admission to the Union, despite his tender of Union dues, and thereby the employer, ABT Sightseeing Tours, Inc., was required to discharge him from its employ. It follows that respondent "caus[ed] * * * an

employer to discriminate against an employee in violation of subsection (a) (3)," thereby violating Section 8(b) (2) of the Act. N. L. R. B. v. National Maritime Union of America, 175 F.2d 686 (2 Cir., 1949), cert. denied, 338 U.S. 954, 70 S.Ct. 492, 94 L.Ed. 589 (1950).

Respondent denies the Board's jurisdiction over these labor practices, however, on two grounds: (1) the several employers, save, perhaps, for Cross Roads Sightseeing Corp., were not doing business in interstate commerce; (2) even if in interstate commerce, the volume of business that each of them did was not large enough to bring any one of them within the Board's announced standards for assuming jurisdiction.

The Companies here involved are engaged in operating bus sightseeing tours within the City of New York. A significant portion of their business is secured from out-of-town travel agents and railroad agents. One of the companies, Cross Roads Sightseeing Corp., paid more than $100,000, during the year prior to the hearing below, to two New Jersey firms for the rental of buses. The vehicles are garaged and serviced in New Jersey and dispatched to New York City when ordered by Cross Roads.

■ These operations, when taken together, clearly affect interstate commerce within the broad interpretation of that statutory requirement. International Brotherhood of Electrical Workers, Local 501 v. N. L. R. B., 181 F.2d 34, 36–37 (2 Cir., 1950), aff'd, 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299 (1951). Though no one of the companies had annual revenues satisfying the Board's self-imposed $500,-000 minimum standard for assumption of jurisdiction over retail concerns, Caroline Supplies and Cement Co., 122 N.L.R.B. 88, the Board found the companies to be a single employer for the purposes of the Act, because the several companies had engaged in multiemployer bargaining with the Union. When so considered, the $500,000 standard is satisfied. The facts upon which this finding was based are as follows:

The New York Sightseeing Bus Association was organized as a New York corporation in 1946. Its members, at the time of the acts here involved, were Times Square Sightseeing Lines, Inc., Blue Lines Sightseeing Tours, Inc., American Sightseeing Lines, Inc., Cross Roads Sightseeing Corp., and Manhattan Sightseeing Corp. Although ABT Sightseeing Tours, Inc., the employer of Irving Scher, was not a member of the Association, ABT's operating subsidiaries—Blue Lines, Times Square, and American—were members. The Board found that these subsidiaries and ABT constituted a single integrated enterprise.

One object of the Association, as specified by its charter, is "to make, on behalf of its members * * * trade agreements with labor organizations." In 1957, the members of the Association bargained with the Union as a group and subscribed, in the end, to a single contract with the respondent. In 1959, the members again dealt with respondent as a group, but this time entered into separate, identical contracts, each one of which provided that it would not be effective unless it *was* identical with the contracts signed by the other companies.

■ The respondent Union argues that there is no evidence of an agreement among the members of the Association to be bound by the results of their joint collective bargaining. Failing such an express agreement, the Union maintains that the employers must be treated individually for purposes of determining the Board's jurisdiction over them. In N. L. R. B. v. Gottfried Baking Co., 210 F.2d 772 (2 Cir., 1954), this court considered and rejected the same argument on nearly identical facts: "We think it is unimportant whether or not the Association existed as a formal entity, so long as it is clear that [the employer] acted jointly with other employers in the Association in the negotiation of collective agreements, as the impact upon interstate commerce would be the same in either case." 210 F.2d at 778. And see N. L. R. B. v. Chain Service Restaurant Employees, Lo-

cal 11, 302 F.2d 167 (2 Cir., 1962). Following Gottfried, we hold that the Board did not abuse its discretion by treating the members of the Association as a single employer for purposes of the Act.

 Respondent further contends that the Board should not be permitted to apply retroactively its recent decision to take jurisdiction over sightseeing operations (see Ray, Davidson & Ray, 131 N.L.R.B. 433), after respondent had relied upon different jurisdictional standards in force in 1959. This contention is without merit for the reasons stated in N. L. R. B. v. Pease Oil Co., 279 F.2d 135 (2 Cir., 1960). And see N. L. R. B. v. Customer Control, Inc., 2 Cir., 1962, 309 F.2d 150.

The petition of the Board for enforcement of its order is granted.