**A.B.T. SIGHTSEEING TOURS, INC., Blue Line Sightseeing Tours, Inc., American Sightseeing Lines, Inc., Times Square Sightseeing Lines, Inc., Plaintiffs,**

v.

**GRAY LINE NEW YORK TOURS, CORP., Defendant.**

United States District Court
S. D. New York.
June 2, 1965.

Weil, Gotshal & Manges, New York City, Ira M. Millstein, Irving Scher, New York City, of counsel, for plaintiffs.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Arthur L. Liman, Daniel J. Sullivan, New York City, of counsel, for defendant.

BONSAL, District Judge.

Plaintiffs Blue Line Sightseeing Tours, Inc., (Blue Line), American Sightseeing Lines, Inc., and Times Square Sightseeing Lines, Inc. (Times Square) are New York corporations engaged in conducting sightseeing bus tours and related tourist services in the metropolitan New York area within the confines of the State of New York. Plaintiff A.B.T. Sightseeing Tours, Inc., a New York corporation, is a holding company organized in 1960 when Blue Line and Times Square were combined into one operating organization.

Defendant, Gray Line New York Tours, Corp., is a New York corporation engaged in conducting sightseeing bus tours and other related tourist services in the metropolitan New York area within the confines of the State of New York.

In their complaint plaintiffs charge the defendant with violations of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2) and Section 7 of the Clayton Act (15 U.S.C. § 18), and seek to recover treble damages allegedly sustained by them by reason of defendant's alleged violations of the Sherman Act.

Jurisdiction is claimed under 15 U.S.C. §§ 15, 22 and 26.

As a second cause of action, plaintiffs charge defendant with violation of Section 340 of the New York General Business Law, McKinney's Consol.Laws, c. 20, and claim jurisdiction under the doctrine of pendant jurisdiction.

Defendant has moved pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure for an order dismissing plaintiffs' first cause of action on the ground that it fails to state a claim upon which relief can be granted, and pursuant to 12 (b) (1) of the Fed.R.Civ.P. for an order dismissing the second cause of action on the ground of lack of jurisdiction over the subject matter. By way of alternative relief, defendant moves pursuant to Rule 12(f) of the Fed.R.Civ.P. for an order striking certain parts of the complaint, and pursuant to Rule 12(b) (1) of the Fed.R.Civ.P. for an order staying this action pending hearing and determination by the Interstate Commerce Commission.

For the purposes of the motion, the allegations in the complaint must be accepted as true. The principal violations alleged are as follows:

(a) that defendant has entered into "unlawful written or tacit" exclusive dealing arrangements with substantially all of the "important" hotels and motels which refer customers to sightseeing bus companies and thereby obtains at least 90% of the hotel-referred sightseeing bus tour clientele in the city (Complaint,

par. 19; hereinafter all paragraph references are to the complaint);

(b) that defendant has a "written or tacit" agreement with the Sheraton organization whereby that organization requires all its hotels to exclusively deal with defendant on referral business (par. 20);

(c) that defendant entered into similar "written or tacit" exclusive dealing arrangements on referral business with the Empire State Building, Eastern Greyhound Lines, Simon & Schuster, Inc., American Express Co. and others not named (par. 21);

(d) that defendant induced the nightclubs, Sammy's Bowery Follies and the Village Barn, and other nightclubs not now known to plaintiffs, to deal exclusively with defendant and to refuse to deal with plaintiffs (par. 22);

(e) that defendant refused to allow plaintiffs to act as its agent in selling nightclub tours (par. 23);

(f) that defendant either acquired Manhattan Sightseeing Bus Tours, Inc. (Manhattan Tours), plaintiffs' "primary competitor" in the obtaining of business furnished by cornermen, or entered into an exclusive dealing agreement with Manhattan Tours under which the latter acts as an exclusive agent for defendant in soliciting business through "cornermen" (pars. 25–29);

(g) that Manhattan Tours dominates the Sightseeing Guides Union and that defendant has entered into a combination with that union pursuant to which the union has settled disputes on numerous occasions by arbitrarily assigning disputed corners to cornermen who solicit business for Manhattan Tours, thereby increasing the amount of business obtained by defendant and decreasing plaintiffs' share of the business (par. 30); and

(h) that defendant has wrongfully attempted to persuade legislative bodies and administrative agencies of the City of New York to enact and promulgate laws and regulations which would suppress and eliminate competition between defendant and plaintiffs (par. 31).

Plaintiffs and defendant are all engaged in the sightseeing business within the City and State of New York and are in competition for this business. Defendant is alleged to be the largest and dominant sightseeing bus company in the City of New York. The complaint also alleges that in the conduct of their respective businesses plaintiffs and defendant advertise and promote their services and contract with individuals, agents, groups and organizations located in other states who are interested in or potentially interested in utilizing sightseeing services in the City of New York, and that sightseeing tours are conducted by plaintiffs and defendant commencing at the point and time of arrival in New York of tourists from other states, and concluding at the point and time of their departure from New York. It is further alleged that plaintiffs and defendant provide services to those visiting the City and State of New York from various states of the United States and from various foreign countries, often as a part of a larger package tour of the City of New York. Plaintiffs allege that the business of plaintiffs and defendant is in interstate commerce.

Defendant denies that the bus sightseeing business in New York City is in interstate commerce and, on this ground, has moved to dismiss plaintiffs' first cause of action on the ground that, interstate commerce being absent, the Sherman and Clayton Acts have no application to the business here involved. Therefore, on defendant's motion to dismiss plaintiffs' first cause of action, the only issue is whether the activities of the parties constitute or substantially affect interstate commerce.

The issue of whether local sightseeing operations affect interstate commerce for purposes of the National Labor Relations Act has been considered in two cases. In

N L R B v. Sightseeing Guides and Lecturers Union, 310 F.2d 40 (2d Cir. 1962) the Court of Appeals for this circuit affirmed a decision of the National Labor Relations Board and held that the sightseeing bus tours industry in the City of New York affected interstate commerce, pointing out that a significant portion of their business is secured from out of town travel agents and railroad agents. The National Labor Relations Board, in Ray Davidson and Ray, 131 N.L.R.B. 433 (1961), held that a Florida sightseeing business substantially affected interstate commerce.

■ The Sherman Act, likewise, condemns not only restraints in commerce, but also condemns wholly local business restraints that substantially affect interstate commerce. See Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 534 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328 (1948); United States v. Frankfort Distilleries, Inc., 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 951 (1945); Lorain Journal Co. v. United States, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951); United States v. Employing Plasterers Ass'n, 347 U.S. 186, 74 S.Ct. 452, 456, 98 L.Ed. 618 (1954); United States v. New Wrinkle, Inc., 342 U.S. 371, 72 S.Ct. 350, 96 L.Ed. 417 (1952); United States v. Women's Sportswear Mfg. Ass'n, 336 U.S. 460, 69 S.Ct. 714, 93 L.Ed. 805 (1949); United States v. International Boxing Club, 348 U.S. 236, 75 S.Ct. 259, 99 L. Ed. 290 (1955). It has been stated by the Supreme Court that Congress intended to exercise its power over commerce to the fullest extent when it enacted the Sherman Act. United States v. Frankfort Distilleries, Inc., supra, 324 U.S. at 298, 65 S.Ct. 661; United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 553, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944); Apex Hosiery Co. v. Leader, 310 U.S. 469, 495, 60 S.Ct. 982, 84 L. Ed. 1311 (1940). Thus, if the sightseeing business here involved affects interstate commerce for the purposes of the National Labor Relations Act, it is reasonable to assume that it affects interstate commerce for the purposes of the Sherman and Clayton Acts. In Marriott Hotels of Atlanta, Inc. v. Heart of Atlanta Motel, Inc., 232 F.Supp. 270, (N.D. Ga.1964) the Court stated: " * * * the Anti-Trust Acts are at least as extensive in their jurisdictions as the National Labor Relations Act." Also, in City of Fort Lauderdale v. East Coast Asphalt Corp., 329 F.2d 871 (5th Cir. 1964) the Court of Appeals reversed the dismissal of a Sherman Act complaint and stated that earlier decisions holding local activities in highway construction to come within the Federal Wages and Hours Act were precedent for determining what constitutes interstate commerce within the scope of the Sherman Act.

Of course the dividing line between what appear to be local activities which may affect interstate commerce and those which do not, is not always easy to draw. In United States v. Yellow Cab Co., 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947), the Supreme Court held that the services rendered by local taxi cabs in Chicago in conveying passengers between their homes, offices or hotels and the railroad stations was a local activity, with only a "casual and incidental" relationship to interstate commerce, but that transportation between railroad stations was a part of the stream of interstate commerce; and the Supreme Court recently denied certiorari in Evanston Cab Co. v. City of Chicago, 325 F.2d 907 (7th Cir. 1963); cert. denied 377 U.S. 943, 84 S.Ct. 1349, 12 L.Ed.2d 306 (1964), where the Court of Appeals held that where Chicago cabs, incidental to their local operations, furnished passenger service to and from a Chicago airport handling interstate flights, this activity did not constitute a part of interstate commerce, nor did it affect interstate commerce within the Sherman Act. Local barber shops serving interstate travelers have been held not to affect interstate commerce under the National Labor Relations Act. Hotel Phillips, Inc. v. Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors' of Int'l Union of America, 195 F.Supp. 664 (W.D. Mo.1961), aff'd, 301 F.2d 443 (8th Cir.

1962), and in this circuit a bowling alley in Plattsburg, New York was held not to substantially affect interstate commerce even though it advertised in and drew customers from Vermont and Canada. Lieberthal v. North Country Lanes, Inc., 332 F.2d 269 (2nd. Cir. 1964).

Perhaps closer to the case at bar is United States v. International Boxing Club, supra, where the Supreme Court held that although a boxing match was a "local affair", the complaint against promoters of boxing matches stated a cause of action under the Sherman Act since promotion services involved the sale of tickets outside of the state, the negotiation of radio and television rights, and the promoters' revenues were derived in part from interstate commerce.

■ It would appear that the bus sightseeing industry in the City of New York has substantial interstate aspects. It may be, as plaintiffs allege, that customers are solicited from outside the state and tours arranged between bus companies within the state and other organizations outside the state. Moreover, there can be no doubt that the sightseeing bus companies make substantial purchases of equipment, supplies, and indeed the buses themselves from sources outside the state, so that these purchases are in interstate commerce. See Katzenbach v. McClung, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964), which held constitutional, as an exercise of the commerce power, the prohibition against discrimination by restaurants if a substantial portion of the food served therein has moved in interstate commerce. See also Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 85 S.Ct. 348, 13 L. Ed.2d 258 (1964). The bus sightseeing industry caters to tourists, and it can doubtless be shown that while some tourists come from other parts of the State of New York, the majority come from other states or from foreign countries. Unlike the taxi cab companies which cater primarily to the local patrons and only incidentally to tourists from outside the state, the bus sightseeing industry caters primarily to tourists from outside the state and only incidentally to local patrons. Indeed, through its contacts with travel agencies, arrangements with out of state agents, and its contacts with hotels to which tourists come, it seems likely that the evidence at the trial will establish that the defendant makes "such a substantial utilization of the channels of interstate trade and commerce that the business itself assumes an interstate character." Lieberthal v. North Country Lanes, Inc., supra, 332 F.2d at 271.

■ The questions as to whether defendant's activities are in interstate commerce or substantially affect interstate commerce and whether they constitute an unreasonable restraint of trade or an attempt to create a monopoly within the meaning of the Sherman and Clayton Acts must await a full disclosure of facts at the trial. Accordingly, defendant's motion to dismiss the first cause of action is denied. If plaintiffs should establish at the trial that the Court has jurisdiction of the first cause of action, it follows that the Court may have jurisdiction of the second cause of action, charging a violation of the New York General Business Law under the doctrine of pendant jurisdiction. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). Accordingly, defendant's motion to dismiss the second cause of action is also denied.

By way of alternative relief, plaintiffs seek an order striking paragraphs 19 through 23 and paragraph 31 of the complaint.

■ Paragraphs 19 through 23 charge exclusive dealing arrangements and refusal to deal with the plaintiffs. Whether or not these activities, if proven, constitute violations of Sections 1 and 2 of the Sherman Act must also depend on the facts as brought out at the trial. Accordingly, defendant's motion to strike paragraphs 19 through 23 of the complaint is denied.

■ Paragraph 31 of the complaint charges defendant with lobbying activities with legislative bodies and adminis-

trative agencies of the City of New York to enact and promulgate laws and regulations designed to suppress and eliminate competition between defendant and its competitors, including the plaintiffs. Noerr Motor Freight, Inc. v. Eastern Railroad Presidents Conference, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), held that lobbying was beyond the scope of the Sherman Act. Accordingly, defendant's motion to strike paragraph 31 of the complaint is granted.

Defendant also moves for an order striking such portions of paragraphs 25 and 27 of the complaint which have reference to a collective bargaining agreement between Manhattan Tours and the Sightseeing Guides Union.

■■ The allegation in paragraph 25 is merely a statement of fact, and the motion to strike as to paragraph 25 is denied. The motion to strike in paragraph 27 is granted to the extent of striking the words "despite the absence of a collective bargaining agreement between defendant and Sightseeing Guides Union."

■ Defendant moves to strike such portions of paragraphs 38 and 39(d) as allege that defendant's activities are against the public policy of New York. These allegations are, at most, redundant since it is clear that if defendant has violated the General Business Law it has also violated the public policy of New York. Accordingly, defendant's motion is denied.

■ Finally, defendant seeks a stay pending a hearing and determination by the Interstate Commerce Commission on the ground that if the complaint alleges that defendant's activities are in or affect interstate commerce for purposes of the Sherman Act, that defendant is a common carrier subject to the primary jurisdiction of the Interstate Commerce Commission. Rio Grande Motor Way, 3 M.C.C. 9 (1937); Resler v. Hunter Clarkson, Inc., 41 M.C.C. 665 (1943). However, 49 U.S.C. § 303(b) (8) exempts from regulation by the Interstate Commerce Commission transportation wholly

within a municipality, and regulation C.F.R. 170.1 exempts transportation by motor vehicles wholly within New York City. Accordingly, if defendant is engaged in transportation solely within New York City, it would not be subject to regulation by the Interstate Commerce Commission.

Moreover, even if defendant should be subject to regulation by the Interstate Commerce Commission, the activities alleged in the complaint, with the possible exception of the Manhattan Tours stock acquisition, do not come within the ambit of the Commission's regulative powers. Immunity from the operation of the anti-trust laws is not lightly to be inferred from the enactment of a regulatory statute. State of Georgia v. Pennsylvania R. R. Co., 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051 (1945); Trans World Airlines, Inc. v. Hughes, 332 F.2d 602 (2d Cir. 1964). As the Supreme Court stated in McLean Trucking Co. v. United States, 321 U.S. 67 at 79, 64 S.Ct. 370 at 377, 88 L.Ed. 544 (1944):

"* * * the Commission has no power to enforce the Sherman Act as such. It cannot decide definitively whether the transaction contemplated constitutes a restraint of trade or an attempt to monopolize which is forbidden by that Act. The Commission's task is to enforce the Interstate Commerce Act and other legislation which deals specifically with transportation facilities and problems."

While the Interstate Commerce Commission, under 49 U.S.C. 5(1) (2), has jurisdiction over pooling arrangements and stock acquisitions between carriers, it is not clear that Manhattan Tours is a carrier, and, morever, the stock acquisition alleged in the complaint is not the "sole or dominant issue" alleged in the complaint. Atlantic Coastline R. R. Co. v. Riss & Co., 105 U.S.App.D.C. 380, 267 F.2d 657 (1958), remanded 170 F. Supp. 354 (D.D.C.1959), cert. denied 361 U.S. 804, 80 S.Ct. 108, 4 L.Ed.2d 57 (1959). Accordingly, defendant's motion for a stay is denied.

Defendant's motions to dismiss or to stay this action are denied. Defendant's motion to strike certain parts of the complaint is granted to the extent of striking par. 31 and that part of par. 27 indicated above.

Settle order on notice.