### NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

### LOCAL 3, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Respondent.

Nos. 388–389, Dockets 30301, 30302.

United States Court of Appeals Second Circuit.

Argued May 26, 1966.

Decided June 15, 1966.

Michael N. Sohn, Atty., N. L. R. B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and George B. Driesen, Atty., N. L. R. B., Washington, D. C., on the brief), for petitioner.

Norman Rothfeld, New York City (Harold Stern, New York City, of counsel), for respondent.

Before FRIENDLY, HAYS and FEINBERG, Circuit Judges.

HAYS, Circuit Judge:

The National Labor Relations Board petitions for enforcement of an order against Local 3, International Brotherhood of Electrical Workers. The order is based upon the Board's finding of violation by Local 3 of Section 8(b) (7) (A) of the National Labor Relations Act, 29 U.S.C. § 158(b) (7) (A).[1] We grant enforcement of the Board's order.

---

1. "(b) It shall be an unfair labor practice for a labor organization or its agents—

\* \* \* \* \*

(7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or re-

The Board adopted the findings of the Trial Examiner which are based upon evidence that, briefly summarized, shows the following facts.

Darby Electric Corporation is engaged in the electrical contracting business in New York City. The firm is a member of the United Construction Contractors Association, Inc. Darby's employees are represented in collective bargaining by Local 199, Industrial Workers of Allied Trades. The Association had a collective agreement with Local 199 to which Darby was a party by reason of its membership in the Association. The period of the agreement was from January 17, 1963 to November 15, 1964.

On February 21 and February 24, 1964 Local 3 picketed a construction project on which Darby's employees were working with signs stating that Darby's employees were not members of Local 3. On the following April 15, 16 and 17, Local 3 picketed another such project with similar signs. Darby filed charges with the Board and the usual Board proceedings ensued. A preliminary injunction against further picketing by Local 3 was secured under the provisions of Section 10(*l*) of the Act.

Section 8(b) (7) (A) was added to the National Labor Relations Act by the Labor Management Reporting and Disclosure Act of 1959. Before the addition of Section 8(b) (7) (A) the National Labor Relations Act had, in Section 8(b) (4) (C), prohibited recognitional picketing where there was another labor organization which had been certified as the representative of the employees. The effect of the addition of Section 8(b) (7) (A) was to forbid picketing in the very common situation where, although the labor organization representing the employees had not been certified, it was recognized by the employer. Thus Section 8(b) (4) (C) and Section 8(b) (7) (A)

have as their purpose the inhibition of picketing by a rival union when the employer is recognizing and bargaining with a union representative whether that representative is certified or not.

We are met at the outset with respondent's contention that the Board has no jurisdiction because the effect of Darby's operation on interstate commerce is covered by the principle of *de minimis*.

There is substantial evidence that Darby is a member of a multi-employer bargaining association, that the volume of business of the association meets the Board's discretionary jurisdictional standards and that the business of at least one member of the association affects interstate commerce within the meaning of the Act. We have held the existence of these elements to be sufficient for the exercise of the Board's jurisdiction. National Labor Relations Board v. Sightseeing Guides & Lecturers Union, 310 F.2d 40, 42 (2d Cir. 1962); National Labor Relations Board v. Gottfried Baking Co., 210 F.2d 772, 777–778 (2d Cir. 1954).

In order to establish that picketing is in violation of Section 8(b) (7) (A) it must appear that the purpose of the picketing is to secure recognition, that the employer is lawfully recognizing a labor organization other than the picketing group and that at the time the picketing takes place a question of representation may not properly be raised.

Respondent urges that the Board is under a duty to establish that Darby was lawfully recognizing Local 199 at the time of the picketing. The Board objects that respondent did not raise this point in the exceptions to the Trial Examiner's report and is therefore barred from raising it now. "No objection that has not been urged before the Board, its member, agent, or agency, shall be

quiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees: (A)

where the employer has lawfully recognized in accordance with this Act any other labor organization and a question concerning representation may not appropriately be raised under section 9 (c) of this Act * * *."

considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." National Labor Relations Act, Section 10(e), 29 U.S.C. § 160(e); National Labor Relations Board v. District 50, United Mine Workers, 355 U.S. 453, 463–464, 78 S.Ct. 386, 2 L.Ed.2d 401 (1958); National Labor Relations Board v. Seven-Up Bottling Co., 344 U.S. 344, 350, 73 S.Ct. 287, 97 L.Ed. 377 (1953); National Labor Relations Board v. Ra-Rich Manufacturing Corp., 276 F.2d 451 (2d Cir. 1960).

▮ The Board has taken the position that when an employer recognizes a union and executes a collective agreement with it, a rebuttable presumption arises that the Union represents a majority of the employees. Shamrock Dairy, Inc., 119 N.L.R.B. 998, 1002 (1957),[2] order enforced, sub nom., International Brotherhood of Teamsters, etc. v. National Labor Relations Board, 108 U.S.App.D.C. 117, 280 F.2d 665, cert. denied, 364 U.S. 892, 81 S.Ct. 224, 5 L.Ed.2d 188 (1960). We believe that the Board is justified in requiring that a party attacking the legality of an employer's recognition of a union should at least present prima facie evidence of illegality. If it was the task of the Board to prove legality in each case even where legality was not put in issue, the Board would be forced to assume an unwarrantedly heavy burden. Putting the initial obligation on the Board would impose an unnecessary drain on its already inadequate resources. There is no equitable reason why the party challenging the lawfulness of the employer's action should not come forward with evidence to support his challenge. See National Labor Relations Board v. Local 182, International Brotherhood of Teamsters, 314 F.2d 53, 60–61 (2d Cir. 1963); Harold Levinsohn Corp. v. Joint Board of Cloak, Suit, Skirt and Reefer Makers' Union, 299 N.Y. 454, 87 N.E.2d 510 (1949).

In the present case no evidence was introduced which would tend to show that Local 199 did not represent an uncoerced majority of Darby's employees. In fact the Trial Examiner found, on the basis of authorization cards and records of dues payments, that at the time Darby became bound by the Association contract all of its employees were members of Local 199.

▮ Turning to the second issue, we are asked to determine whether the Board was justified under the Act in finding that the picketing was for recognition. Whether the Union's objective was or was not recognition is a question of fact. National Labor Relations Board v. Local 182, International Brotherhood of Teamsters, supra, 314 F.2d at 58–59. There was conflicting evidence but, except in the most extraordinary circumstances, the determination of the triers of fact on questions of credibility must be accepted. National Labor Relations Board v. Warrensburg Board & Paper Corp., 340 F.2d 920 (2d Cir. 1965). Here there is no reason whatever for rejecting the findings of the Trial Examiner as to the recognitional character of the picketing.

Respondent's business representative, Robertson, sought out Lopresti, president of Darby, and told him that if he continued his relations with Local 199 Darby would be permitted to work only on small jobs but that if he "signed up" with Local 3, he "would have no problems." Robertson cited the case of another company which had had a contract with Local 199 but then signed up with Local 3 and thereafter did not have "any problems." On another occasion Robertson told Lopresti that he "should sign up," if he did so he "wouldn't have any trouble." Later Robertson told Lopresti that the only way he would be able to finish a job on which Darby was working would be to sign up with Local 3. If he didn't sign up with Local 3, Robertson said, he would

---

2. See Oilfield Maintenance Co., 142 N.L.R.B. 1384, 1386 (1963); Bud's Cooling Corp., 138 N.L.R.B. 596, 601 (1962); Lori-Ann of Miami, Inc., 137 N.L.R.B. 1099, 1111 n. 36 (1962); Crown Drug Co., 136 N.L.R.B. 865, 869 (1962).

have pickets on the job. Since Lopresti still declined to "sign up," his projects were picketed soon thereafter. Thus the Board's finding that the picketing was recognitional is clearly supported by substantial evidence. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

 There remains only the question of whether Local 3's picketing took place at a time when it would have been proper to raise a question of representation. It is the Board's position that at the time that Local 3 picketed, the collective agreement between the Association and Local 199, to which Darby was a party, constituted a bar to the selection of representatives. While the contract bar rule is not statutory (but see Fay v. Douds, 172 F.2d 720, 724 (2d Cir. 1949) "we assume that the 'contract bar' is, as it were, written into the statute"), it has received judicial recognition. See e. g., in addition to Fay v. Douds, supra, Local 1545, United Brotherhood of Carpenters, etc. v. Vincent, 286 F.2d 127 (2d Cir. 1960); Harbor Carriers of Port of New York v. National Labor Relations Board, 306 F.2d 89 (2d Cir. 1962), cert. denied, sub nom., Deck Scow Captains Local 335, Independent v. Harbor Carriers of Port of New York, 372 U.S. 917, 83 S.Ct. 727, 9 L.Ed.2d 723 (1963).

Local 3 advances various grounds which, it is argued, prevent the contract from being a bar to representation proceedings. Local 3 says, for example, that the Association was not "a valid association." But the Board, on the basis of substantial evidence, has decided against Local 3 on this issue, and Local 3 presented no evidence which would tend to establish the invalidity of the Association. Similarly Local 3 would have us hold that the contract is not a bar because of the change of affiliation of Local 199. But there is no evidence that this change had any effect on the structure, functions, or membership of the union. Under these circumstances the Board is correct in holding that mere change in affiliation did not change the effect of the contract as a bar. Local 3's argument, based on the inclusion in the contract of an illegal union security clause, is equally unavailing, since the clause was amended to remove the offending material more than six months before the picketing took place. Local 3's charge that the unit covered by the contract is not an appropriate unit is refuted by the record.

The Board also bases its conclusion on the contention that where the parties have engaged in multi-employer bargaining and wish to continue to do so, a question of representation cannot be raised as to a single employer.

Since we are persuaded that the evidence in the record supports the Board's findings on all of the critical issues, we grant enforcement of the Board's order to cease and desist from recognitional picketing at Darby's construction projects and to post the usual notice.

Petition granted.