Mary K. HILL and Randolph S. Hill,
Appellees,

v.

Dr. Juan B. GONZALEZ, D.D.S., and
Mayo Clinic, Appellants.

No. 71–1322.

United States Court of Appeals,
Eighth Circuit.

Feb. 17, 1972.

See, also, 53 F.R.D. 1.

Henry Halladay, Minneapolis, Minn., for appellants.

John R. Cleary, Kansas City, Mo., for appellees.

Before MATTHES, Chief Judge, LAY, Circuit Judge, and HUNTER, District Judge.

LAY, Circuit Judge.

The defendants appeal a jury verdict of $81,500 [1] rendered in favor of plaintiffs Mary K. Hill and Randolph S. Hill, arising from a burn injury and resulting amputation of Mrs. Hill's middle two fingers of her left hand. The basic complaints raised on appeal by defendants are (1) that plaintiffs' claim is not supported by expert medical testimony as to causation and negligence; and (2) that expert medical testimony offered by plaintiffs relating to the dangerous propensities of the substance used by Dr. Gonzalez was not competent. We affirm.

The facts may be set forth briefly. In 1968 Mrs. Hill lost the tips of the middle two fingers of her right hand in a lawnmower accident. She was referred to Dr. Gonzalez at Mayo Clinic to obtain new implanted prosthetic finger tips. Dr. Gonzalez decided to first make an impression of the fingers on her left hand as a guide. He used a substance known as Coecal, a dental stone, produced by Coe Laboratories in order to make an impression. The process necessitated the placing of Mrs. Hill's fingers into the Coecal contained within an ice cream carton. Since Coecal is self-heating as it hardens the plaintiff was requested to tell the doctor when it started getting warm. She did so, but Dr. Gonzalez was thereafter unable to extract her fingers from the mold. The longer the fingers remained encased in the mold (16 to 20 minutes) the more the heat increased, and Mrs. Hill suffered excruciating pain. When the fingers were finally extracted they were blistered and the skin was eroded. In the report of the accident Dr. Gonzalez wrote:

"In the process of making the impression with dental stone, patient's left hand middle and ring finger got burned in spite of my efforts to cool the mold and release the hand from the mold."

Subsequently the middle fingers on her left hand had to be amputated.

Dr. Gonzalez's own admissions tend to establish both causation and negligence. Although Coecal had been used before for making extraoral impressions, Dr. Gonzalez admitted that (1) it was not a common procedure, (2) that he had never tested it to determine its heat generating qualities, and (3) that it was during the process of making the impressions that the burns ensued. The President of Coe Laboratories testified that Coécal can be difficult to remove from any object that has angles to it. His testimony also showed that Coecal's recommended usage is for duplicating forms for dental impressions, these impressions being first made by other flexible, non-heat generating substances. Testing of Coecal demonstrated that it can run from an initial 63° F. to 151° F. in fifteen minutes at which point it is in a hardened state. Dr. Hursel O. Kallestad testified for the plaintiffs. He had considerable experience as a prosthetic dentist and testified that Coecal would not be suitable as an impression material on the human body because it would be too hard to remove and too dangerous. Plaintiffs offered additional expert testimony that second or third degree burns may follow a temperature of 130° F. within approximately thirty seconds and such burns may result in one second from a 150° F. temperature.

■ We find no merit whatsoever to defendants' arguments on appeal. The evidence is substantial from which the jury could reasonably find both causation and defendants' negligence in causing plaintiff's injury.

■ Even if no medical testimony was offered to show causation,[2] the occurrence and ensuing burn to plaintiff's

1. Reduced on remittitur to $65,000.

2. In the instant case Dr. Gonzalez's admissions as an expert were sufficient to take the case to the jury. See Moehlen-brock v. Parke, Davis and Co., 145 Minn. 100, 176 N.W. 169, 170 (1920). Cf. Richeson v. Roebber, 349 Mo. 132, 159 S.W.2d 658, 659 (1941).

healthy tissue was within the common knowledge and experience of a layman to judge causation in fact. See Schulz v. Feigal, 273 Minn. 470, 142 N.W.2d 84, 89 (1966); Jensen v. Tinner, 260 Minn. 22, 108 N.W.2d 705, 711–712 (1961). Cf. Walstad v. University of Minnesota Hospitals, 442 F.2d 634, 641 (8 Cir. 1971). This case falls within the observation of the Supreme Court of Minnesota in Christy v. Saliterman, 288 Minn. 144, 179 N.W.2d 288, 301 (1970):

> "This rule is subject to the exception that expert testimony is not necessary where the nature of the alleged negligent conduct is such that inferences to be drawn from the facts are within the range of common experience of men and juries are equally as capable of drawing inferences as experts. . . . In such a case, where the mode of treatment has been shown, the practical commonsense of the jury will enable them to determine that the injury or failure of cure is owing to unskillful or negligent treatment."

Nor do we find merit in defendants' attack on Dr. Kallestad's competence to testify. Dr. Kallestad had no specialty in Dr. Gonzalez's field of extraoral prosthetics nevertheless he had worked with Coecal and knew its characteristics. This was the thrust of his testimony. The test is whether the practitioner's education and experience demonstrate a knowledge of the subject matter. Simply because the particular expert is not a specialist in a particular field does not bar him from testifying as to facts which are within the ordinary medical or dental practice. White v. United States, 399 F.2d 813, 820 (8 Cir. 1968); Harris v. Smith, 372 F.2d 806, 813–814 (8 Cir. 1967); Sher v. De Haven, 91 U.S.App.D.C. 257, 199 F.2d 777, 782, cert. denied, 345 U.S. 936, 73 S.Ct. 797, 97 L.Ed. 1363 (1953).

Judgment affirmed.