Neil A. HOLMGREN, Appellant,

v.

MASSEY–FERGUSON, INC., Appellee.

No. 74–1627.

United States Court of Appeals,
Eighth Circuit.

Submitted March 14, 1975.

Decided May 15, 1975.

Robert B. Ingram, Belli, Ashe & Choulos, San Francisco, Cal., for appellant.

J. Gerald Nilles, Nilles, Hansen, Selbo, Magill & Davies, Fargo, N. D., for appellee.

Before CLARK, Associate Justice,* and LAY and BRIGHT, Circuit Judges.

LAY, Circuit Judge.

The plaintiff, Neil A. Holmgren, appeals the dismissal of a personal injury suit filed as a diversity action in the United States District Court for the Dis-

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, sitting by designation.

trict of North Dakota. He was seriously injured when he fell into the auger of a corn picking machine which had been designed and manufactured by the defendant, Massey-Ferguson, Inc. The facts surrounding the accident which led to his injury are not in dispute. It occurred in 1970 when the plaintiff, then 19 years old, was working for his father, a custom combiner. He was operating a combine fitted with a Massey-Ferguson corn picker in a field in western Nebraska. One of the stalks became wedged in the machine and he stepped out on the unguarded deck of the corn picker and kicked it free. While re-entering the cab, he slipped and fell into the auger portion of the machine. The auger continued to turn, drawing him inward. It finally jammed when his body was almost halfway in the machine. As a result of the accident, it was necessary to amputate both of his legs. Plaintiff sought to recover under both negligence and strict liability.[1]

At the close of the plaintiff's case, the trial court struck the testimony of the plaintiff's expert witness concerning defects in the design of the corn picker on the ground that he did not have sufficient qualifications to testify as an expert in the field of design safety. It thereafter granted the defendant's motion for a directed verdict. On appeal the plaintiff alleges that the court erred in (1) striking the testimony of the expert witness; (2) refusing to apply the doctrine of enhanced injury; (3) failing to apply Nebraska law; and (4) excluding evidence of an experiment.

We find it necessary to discuss only the exclusion of the expert testimony.

We hold this to have been error and remand for a new trial.

The thrust of the plaintiff's theory of liability was that the corn picker was defectively designed in that (1) the table auger slip clutch did not function properly, (2) the table auger was not shielded, and (3) the rear deck of the corn picker was not shielded. In an attempt to prove that the design was not safe, plaintiff offered the testimony of Dr. Robert McDougal, professor of mechanical engineering at North Dakota State University. Dr. McDougal held a Ph.D. in Engineering Mechanics. He had taught or taken a variety of engineering courses during his academic career, including some concerned with principles of machinery design. He was familiar with farm machinery through his experiences as a farm boy and through work as a custom combiner and hay bailer, and had been a farmer himself for about 17 years. He had been involved in consulting work in the fields of machinery design, structure and mechanics. He testified that he was familiar with the design principles of agricultural machinery and had familiarized himself with the particular machinery in question.

Dr. McDougal testified that in his opinion a different type of slip clutch was necessary for a safe design and that both the auger as well as the deck should have been shielded. The trial court excluded his testimony for the basic reason that he was not a design engineer and thus not familiar enough with design practices followed in the agricultural industry.

■■ The broad and generally stated test for determining the qualifications of a given witness to testify as an expert is

---

1. At the time plaintiff's complaint was filed his claim was based on strict liability under Nebraska law. *See* Kohler v. Ford Motor Co., 187 Neb. 428, 191 N.W.2d 601 (1971). The trial court ruled, however, that under the North Dakota conflict of law rule North Dakota law would apply. Since this court had previously ruled that North Dakota had not yet adopted strict liability, *see* Christensen v. Osakis Silo Co., 424 F.2d 1301 (8th Cir. 1970), the plaintiff moved to dismiss without preju-

dice so the action could be refiled in Nebraska. His motion was denied. Plaintiff asserts that the trial court abused its discretion in denying the motion. A motion for dismissal under Rule 41(a)(2), Fed.R.Civ.Pro., is committed to the sound discretion of the trial court and its ruling will not be disturbed absent a showing of abuse of that discretion. United States v. Gunc, 435 F.2d 465 (8th Cir. 1970). We find no abuse here.

whether his knowledge of the subject matter is such that his opinion will most likely assist the trier of fact in arriving at the truth. *See* Moran v. Ford Motor Co., 476 F.2d 289 (8th Cir. 1973); Chicago Great Western Ry. Co. v. Beecher, 150 F.2d 394 (8th Cir. 1945), cert. denied, 326 U.S. 781, 66 S.Ct. 339, 90 L.Ed. 473 (1946). The determination of this preliminary question is left to the broad discretion of the trial court and while its resolution will not ordinarily be disturbed, *Beecher, supra,* at 400, it is not inviolate and may be reversed if this court is convinced that it was "manifestly erroneous" and a clear abuse of discretion. Moran v. Ford Motor Co., *supra* at 291; Rhynard v. Filori, 315 F.2d 176, 178 (8th Cir. 1963). *See also* Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962).

This court has found error in the exclusion of expert testimony in several cases. In Harris v. Smith, 372 F.2d 806 (8th Cir. 1967), the plaintiff's son lost his arm due to the alleged malpractice of the defendant, an orthopedic surgeon. The plaintiff, a medical doctor specializing in psychiatry, offered his own expert testimony as to the cause of the infection which led to the amputation. The trial court excluded it because he was not an orthopedic specialist. This court reversed, finding a "well established principle" that a doctor's testimony cannot be excluded simply because he is not an expert in the precise discipline involved. *See also* Hill v. Gonzalez, 454 F.2d 1201 (8th Cir. 1972).

In Moran v. Ford Motor Co., *supra,* the plaintiff called the owner and operator of a body shop as an expert witness in the field of automotive suspension systems. The district court held such testimony beyond his competency. We summarized the relevant law while reversing for a new trial:

A witness may be qualified as an expert based upon his knowledge, skill, experience, training or education. . . . The test is whether the witness' training and experience demonstrate a knowledge of the subject matter. . . . And practical experience as well as academic training and credentials may be the basis of qualification. . . .

Whether a witness is qualified to testify as an expert is normally within the discretion of the trial court. . . However, as this court observed in Twin City Plaza, Inc. v. Central Surety & Insurance Corp., 409 F.2d 1195, 1203 (8 Cir. 1969):

"If the witness, based upon his background skill, possesses extraordinary training to aid laymen in determining facts and if he bases his answer upon what he believes to be reasonable scientific or engineering certainty, generally the evidence should be admitted, subject, of course, to the cross-examination of the adversary. The weaker the scientific opinion, or the less qualified the expert, the more vigorous will be the cross-examining attack and undoubtedly the less persuasive will be the opinion to the trier of fact."

476 F.2d at 291.

■■ Acceptance of an expert's qualifications cannot depend on his precise skill or background in a particular profession or industry. If the subject matter (safe design) falls within a person's experience in or overall knowledge of a specialized skill (engineering), this is sufficient to qualify the witness as an expert. We deem it too strict a standard that one must have manufactured or previously designed machinery to understand principles of safe design. *Cf.* Salem v. United States Lines Co., *supra.* General technology within scientific disciplines is not shared by so few. In view of the qualifications presented we find Dr. McDougal's testimony should have been admitted.

■ Shortly before this appeal was heard the Supreme Court of North Dakota adopted the rule of strict liability in product cases. *See* Johnston v. American Motors, 225 N.W.2d 51 (N.D.1974). A design defect is, of course, actionable under strict liability. *See* Hoppe v. Mid-

west Conveyor Co., 485 F.2d 1196 (8th Cir. 1973). In view of the necessity for a new trial and the plaintiff's counsel's concession at oral argument that he would not pursue the negligence theory as long as strict liability is applicable under North Dakota law, it is not necessary to discuss the enhanced injury cases or whether North Dakota or Nebraksa law governs. Nor do we need to rule on the exclusion of the experimental evidence since the foundation offered may be different in the new trial.

Reversed and remanded.[2]

---

2. The directed verdict in this case was rendered at the close of the plaintiff's case which alone occupied in excess of 800 pages of transcript. Once again we emphasize the wisdom and expediency of reserving a ruling on such motions until the jury has had the opportunity to weigh the evidence. *See* Passwaters v. General Motors Corp., 454 F.2d 1270, 1272–73 (8th Cir. 1972); Barnett v. Terminal R. Ass'n of St. Louis, 200 F.2d 893, 896 (8th Cir. 1953).